645 N.E.2d 370 (1994)
268 Ill.App.3d 1070
206 Ill.Dec. 365
In Re ESTATE OF Arthur R. RUBLOFF (Rubloff Evergreen Limited Partnership (RELP), Plaintiff-Appellee, v. TPG Financial Inc., et al., Defendants-Appellants (TPG Financial, Inc., et al., Plaintiffs; Rubloff Evergreen Limited Partnership, et al., Defendants)).
No. 1-93-2341.
Appellate Court of Illinois, First District, Sixth Division.
December 16, 1994.
*371 Laurence H. Levine and Cary R. Perlman of Latham & Watkins, Chicago, for appellants.
Harry B. Rosenberg, Maureen A. Mosh and Duane F. Sigelko of Sachnoff & Weaver, Ltd., Chicago, for appellee.
Presiding Justice EGAN delivered the opinion of the court:
This case involves the estate of the prominent real estate developer, Arthur Rubloff, who died on May 24, 1986. Harry W. Reed, Edward A. Newmann, Vince Gavin and Alan W. Proudfoot are the executors of the estate and the trustees of the Arthur Rubloff Charitable Residuary Trust. (They will be identified collectively as "the Executors.") At the time of his death, Rubloff was the managing general partner of Evergreen Plaza Associates, Limited Partnership ("the Partnership"), in which he owned a 45% interest. The principal assets of the Partnership were a shopping center called Evergreen Plaza, located at 95th Street and Western Avenue in Evergreen Park, Illinois, and certain adjacent properties in Chicago and Evergreen Park. In his will, Rubloff bequeathed the residue of his estate to a charitable residuary trust; in accordance with the terms of the trust, the assets are to be distributed to 23 charitable beneficiaries ("the Beneficiaries").
In 1988, the Executors transferred the estate's entire interest in the Partnership to the Rubloff Evergreen Limited Partnership (RELP), a newly created limited partnership. The estate owns a 100% interest in RELP, and RELP owns the estate's 45% interest in Evergreen Plaza. RELP and TPG Financial, Inc., (TPG), a Missouri corporation, are the two general partners of the Partnership. TPG's interest in the Partnership is less than 1%. There were 13 other limited partners each of whom owns interests which are less than 10%. (TPG and the 13 limited partners will be identified collectively as "the Partners.")
Under Rubloff's will, the assets and earnings of the trust were to be distributed to the Beneficiaries ten years after Rubloff's death, which will be May 24, 1996. The terms of the trust granted the trustees broad authority to manage, invest, retain and/or liquidate the assets of the estate and of the trust. In the trust Rubloff expressed the opinion that the Residuary Trust "provides the most secure and flexible means of insuring that such various investment interests are not fractionalized or prematurely liquidated to the detriment of the beneficiaries of the Residuary Trust."
Shortly after Rubloff's death, Sidney Golding, Rubloff's successor as general partner, advised the Executors that they should consider selling the estate's interest in the Partnership. Golding died in July 1987. His death constituted a dissolving event under the original partnership agreement. The Executors did not accept two offers to purchase or to negotiate a purchase of the estate's interest in the Partnership. One was made in November 1986, and the other in October 1988.
In early 1992 all the partners in the Partnership negotiated and executed an amendment to the Partnership agreement. The amendment which was to be effective February 15, 1992, designated RELP and TPG to be the general partners of the Partnership. *372 Neither RELP nor TPG was to act as a managing partner. Day-to-day management was to be handled by an independent professional management company under the guidance of both TPG and RELP; but TPG directly supervised the management company.
The amendment expressly gives RELP the exclusive right and power to dissolve the Partnership after August 15, 1992:
"Section 6 of the Partnership Agreement is hereby amended to provide that if, on or before August 15, 1992:
(a) the Partnership shall not have accepted, conditionally or unconditionally, an offer to purchase all or substantially all of the assets of the Partnership;
(b) Rubloff Evergreen Limited Partnership ("RELP") shall not have accepted, conditionally or unconditionally, an offer to purchase all of its partnership interests in the Partnership; or
(c) RELP shall not have otherwise agreed,
then, at any time after August 15, 1992, the Partnership may be dissolved by RELP by giving written notice of such dissolution to each other partner. In the event that the Partnership is dissolved pursuant to this Section 6, then the General Partners shall be responsible for winding up the affairs of and terminating the Partnership; and the General Partners do hereby undertake to cooperate in promptly doing so."
The amendment provides that it would not become operative until RELP received authorization to execute the amendment from the Probate Division of the circuit court. The Executors filed a petition in the circuit court for this authorization and informed the court that they believed that the amendment "would facilitate the Estate's sale or liquidation of its partnership interest." The circuit court authorized RELP's execution of the amendment on April 30, 1992.
In a September 11, 1992, letter, the Executors indicated that before October 31, 1992, they would entertain any bona fide offers by the Partners to purchase RELP's interest in the Partnership. In letters dated October 15 and October 22, 1992, the Partners responded that they did not wish to make an offer to purchase RELP's 45% interest. The Partners suggested that the amended partnership agreement be extended.
In letters dated October 16 and October 29, 1992, the Executors expressed disappointment with the failure of the Partners to make any offer to purchase RELP's interest. There is no agreement in the letters by the Executors to extend the amended agreement. The Executors expressly stated that they were unwilling to extend the October 31, 1992, deadline for purchase offers.
On November 4, 1992, RELP filed proceedings in the Probate Division of the circuit court requesting confirmation of the dissolution of the Partnership and that RELP be appointed to conduct the wind-up of the Partnership.
The Partners filed a separate action in the Chancery Division of the circuit court naming RELP, the Executors and Robert Brownson, the manager of the assets of the estate. (RELP, the Executors and Brownson will be identified collectively as "the Rubloff Parties.") In counts I, II and III, the complaint alleged that RELP breached a fiduciary duty to the other partners in the Partnership; the Executors and Brownson tortiously interfered with the business relationship among the Partners because they "cause[d] RELP to breach its fiduciary duty"; and the Executors and Brownson unlawfully conspired with their counsel to interfere in the business relationship among the Partners. There were two other counts of the complaint which were transferred to the Law Division of the circuit court and are not involved in this appeal.
In January 1993, the action filed by RELP and the action filed by the Partners were consolidated in the Probate Division of the circuit court. The Rubloff Parties filed a motion for partial summary judgment requesting that the court confirm the dissolution of the Partnership and dismissal of the first three counts of the Partners' chancery complaint. The Partners filed a motion for partial summary judgment seeking a denial of RELP's request to be given sole authority to wind-up the affairs of the Partnership.
*373 On May 14, 1993, the Partners filed a motion requesting the court to add the Beneficiaries as necessary parties and to lift the stay on discovery that had been ordered by the court. After hearing oral arguments on all pending motions, the trial judge granted the motion of the Rubloff Parties and confirmed the dissolution of the Partnership; he also dismissed the first three counts of the Partners' chancery complaint; he granted the Partners' motion for partial summary judgment; and ordered both RELP and TPG to participate in the wind-up of the Partnership. He denied the Partners' motion to add the Beneficiaries as necessary parties and their motion to lift the stay of discovery.
The Partners appeal from the summary judgment order and from the order denying their motion to require that the Beneficiaries be made parties. The Rubloff Parties do not appeal from the order requiring that TPG participate in the wind-up of the corporation.
Because this case was decided on summary judgment, the threshold issue is whether there are any material factual questions still unresolved. All parties recognize that the amended agreement gives RELP the power to dissolve the partnership if, before August 15, 1992, (1) the Partnership had not accepted an offer to purchase all or substantially all of its assets; or (2) RELP had not accepted an offer to purchase all of RELP's interest in the Partnership; or (3) RELP had not agreed not to dissolve. The Partners contend that there is a factual question of whether RELP had agreed not to dissolve. We do not agree with that contention.
RELP's complaint in the Probate Division alleged that RELP had not agreed not to dissolve. The Partners answered that they had no information or knowledge to form a belief whether RELP had "otherwise agreed" not to dissolve. The Rubloff Parties presented an affidavit from Robert S. Brownson, the president of the general partner of RELP, stating that RELP "has not otherwise agreed not to dissolve the Evergreen Plaza Associates Limited Partnership." The Partners responded with an affidavit from Bruce A. Provo, TPG's president and owner, stating that Provo "believed" that RELP had agreed not to dissolve the Partnership.
We disagree with the isolated statement in the Partners' brief that the Brownson affidavit is objectionable. Brownson's statement is a negative averment; and the Partners do not suggest how Brownson could have properly couched a denial that RELP, of which he was President, had ever agreed not to dissolve. Cf. Shumak v. Shumak (1975), 30 Ill.App.3d 188, 191, 332 N.E.2d 177 ("[P]arty is not required to make plenary proof of a negative averment." Wife's denial that she had ever given husband "cause or provocation to act" in a certain manner held sufficient.)
We agree with the Rubloff Parties that the affidavit of Provo is insufficient to countervail the affidavit of Brownson. The pertinent part of Provo's affidavit is as follows:
"Because I know and have discussed with RELP and the Trustees the 40 year history of cooperation among the partners, the adverse tax consequences that would accrue to the Limited Partners following a straight sale, the potential real estate tax consequences of such a sale, and the fact that all Limited Partners desire to hold their interest in Evergreen, I believe that RELP had agreed that the partnership would continue beyond October 31, 1992." (Emphasis in original.)
An affidavit made on information and belief is insufficient in absence of an averment of relevant facts upon which the belief is based. (Fooden v. Board of Governors' State Colleges and Universities (1971), 48 Ill.2d 580, 272 N.E.2d 497; see also Go-Tane Service Stations, Inc. v. Sharp (1979), 78 Ill.App.3d 785, 33 Ill.Dec. 916, 397 N.E.2d 249 (affidavit containing opinion insufficient where it failed to state specific facts that would justify the opinion).) In our judgment the "facts" alleged in support of Provo's thought, which are for the most part conclusional, are insufficient to support his thought or opinion and are insufficient to create a question of fact of whether the Executors had decided not to dissolve.
The Partners refer to the following additional facts in support of their argument that *374 a factual question exists whether RELP agreed not to dissolve:
(1) Forty years of cooperation between the Partners and Rubloff during which Rubloff combined the Partners' money with his management for the benefit and profit of all the Partners;
(2) The decision of the Executors to retain the estate's interest in Evergreen Associates "despite its highly non-liquid nature";
(3) The Executors' refusal to respond to the Partners' offers to purchase the estate's partnership interest in order to preserve the Partnership;
(4) The Executors' insistence that RELP be named a general partner to the Partnership, knowing the commensurate managerial and fiduciary duties that accompanies such a position;
(5) The line of inquiry opened after August 15, 1992, by RELP regarding various sales options other than a forced sale by dissolution;
(6) RELP's knowledge that the commercial real estate market at the time of dissolution was in a depression and that adequate market value could not be obtained, particularly if potential buyers were aware that dissolution compelled wind-up and sale.
We reject the Partners' claim that these facts establish proof that RELP had agreed not to dissolve the Partnership. The forty years of cooperation between the parties during the lifetime of Rubloff establish nothing pertinent to the issue before us. Nor does the decision to retain the estate's interest in the Partnership after Rubloff's death. Nor does the Executors' refusal to respond to the Partner's offers to purchase the estate's interest. We note that one offer was made almost six years before the amendment was executed and the last offer was made almost four years before the amendment was executed. We note further that, according to the unrebutted affidavit of one of the Executors, the offers were for far less than the appraised value of the estate's interest in the Partnership.
The Executors' alleged insistence that RELP be named a general partner also has no probative value on the question before us. The fact that RELP sought prospective buyers after the amendment was executed in no way establishes that RELP agreed not to dissolve. A better argument could be made that the actions of the Executors after August 15 were proof that they had agreed to dissolve. Finally, the Executors' knowledge of a depressed real estate market is also irrelevant. It is not unheard of that depressed real estate markets later become even more depressed. And, as the Rubloff Parties point out, the dissolution simply gives them the right to sell. It does not mean that they must sell immediately. We conclude that RELP established, as a matter of law, that it did not agree not to dissolve and that it acted in accordance with the amended agreement.
The Partners also argue that the agreement does not give RELP an absolute right to dissolve the Partnership without considering the duty it owes to the Partners. All parties recognize the rule that a general partner owes his limited partners a fiduciary duty which encompasses the duty of exercising good faith, honesty and fairness in his dealings with them.
The Partners cite Labovitz v. Dolan (1989), 189 Ill.App.3d 403, 136 Ill.Dec. 780, 545 N.E.2d 304. Labovitz does not support the Partners' position. The issue in that case, which did not involve dissolution of a partnership, was whether the discretion granted "solely and exclusively to a general partner in a limited partnership agreement authorizes the general partner to use economic coercion to cause his limited partner investors to sell their interests to him at a bargain price." (Labovitz, 189 Ill.App.3d at 404, 136 Ill.Dec. 780, 545 N.E.2d 304.) The court held that the allegations of the complaint, if true, established that the general partner was engaging in "self-dealing at the expense of those to whom the managing partner" owed a fiduciary duty. (Labovitz, 189 Ill.App.3d at 417, 136 Ill.Dec. 780, 545 N.E.2d 304.) The Labovitz opinion is sound; but we fail to see its application here. While we need not decide whether the Rubloff Parties' contention that RELP had unfettered discretion is correct, we do agree with their claim *375 that the allegations of the Partners' pleading is bereft of any allegation of self-dealing or exercise of discretion for personal benefit on the part of RELP.
Finally, we express disagreement with the Partners' claim that the judge abused his discretion in denying their motion for discovery. If a party fails to allege facts to support a cause of action, that party does not have the unrestricted right to engage in discovery in the Macawberish hope that something will turn up. Cf. Zahray v. Emricson (1962), 25 Ill.2d 121, 182 N.E.2d 756 (pleading in election contest must allege facts which, if true, would impose duty on court to declare election void and must do more than show pleader desires, on suspicion, to engage in discovery).
For these reasons, we hold that the trial judge correctly ruled that the Rubloff Parties did not violate any fiduciary obligation to the Partners by dissolving the Partnership.
The Partners next claim that the judge erred in dismissing the three counts of their chancery complaint, even if the judge correctly ruled that the dissolution of the Partnership was proper. We agree with the Rubloff Parties' argument that the counts dismissed necessarily depend on the Partners' claim that RELP's dissolution was wrongful and a breach of a fiduciary duty. For that reason, we hold that the trial judge properly dismissed the three counts of the chancery compliant.
The Partners' last contention is that the judge erred in denying their motion to require that the Beneficiaries be made parties. In the trial court, their motion expressly contended that the Beneficiaries were necessary parties. The thrust of their argument in this court seems to be the same. The law is otherwise. In general, a trustee represents the beneficiaries in actions to which he is a party; and whether the beneficiaries should be made parties to a suit affecting the trust rests in the sound discretion of the court. Anderson v. Elliott (1954), 1 Ill. App.2d 448, 117 N.E.2d 876.
In their motion to compel joinder of the Beneficiaries, the Partners alleged that the "Executors/Trustees have demonstrated that they are not capable of adequately protecting the Charitable Beneficiaries' interest." The basis of that conclusional statement was contained in the next paragraph of the motion which alleged:
"Among other things, the Executors/Trustees insisted on holding the bulk of the Estate's assets in a single piece of real estate notwithstanding warnings about market risk and illiquidity. In addition, the Executors/Trustees have caused non-eligible persons to be covered by the insurance policy for employees of Evergreen Mall, to the detriment of the Charitable Beneficiaries."
The allegation that the Trustees had caused non-eligible persons to be covered by the insurance policy was addressed solely to the two counts of the complaint which were transferred to the law division. Consequently, the only fact alleged in support of a claim that the Beneficiaries must be made parties to the RELP complaint is the allegation that the Executors insisted on holding the bulk of the estate's assets in a single piece of real estate despite warnings about market risk and illiquidity. In our judgment, that conclusional allegation is insufficient to require that the Beneficiaries be made parties.
The initial complaint was filed November 4, 1992. RELP's motion for summary judgment was filed in February 1993, and all briefs had been submitted by early March, 1993. The hearing on the motion for summary judgment was set for June 9, 1993; and the Partners filed the motion to require that the Beneficiaries be made parties on May 19. Requiring that the Beneficiaries be made parties would in turn require the issuance of summons to all the Beneficiaries, who would be entitled to time in which to file an answer or other pleadings. The Partners do not explain why they waited so long to file the motion, and they do not deny that the proceedings would have been delayed. Nor do they adequately explain why they did not make the Beneficiaries parties. If they made the Beneficiaries parties defendants, there was nothing to stop a realignment of parties.
More important, the Partners do not tell us what the Beneficiaries could possibly *376 plead or argue that the Partners had not already pleaded and argued. Based on all that was before the trial judge, it would not have been unreasonable for him to conclude that the motion was filed for the purpose of delay. We conclude that he did not abuse his discretion in denying the Partners' motion.
The Partners rely on Norris v. Estate of Norris (1986), 143 Ill.App.3d 741, 97 Ill.Dec. 639, 493 N.E.2d 121. In that case, the beneficiaries of a testamentary trust filed an action against the trustee. The trial judge dismissed their complaint on the ground they lacked standing. The appellate court remanded the case to the trial court to specify whether the dismissal was with or without prejudice. The trial judge then dismissed their complaint with prejudice and held that the trustee, and not the beneficiaries, was entitled to notice of the executor's accounts filed in the probate court. In interpreting a specific provision of the Probate Act, the appellate court disagreed and held that the beneficiaries had standing to object to the administration of the estate and, therefore, were entitled to notice of the probate proceedings. Norris is factually wide of the mark in this case. Norris might be authority in this case if the Beneficiaries had filed a petition for leave to intervene or their own complaint, and the trial judge denied the petition to intervene or dismissed their complaint. There is a difference between a proper party and a necessary party. Safanda v. Zoning Board of Appeals (1990), 203 Ill. App.3d 687, 149 Ill.Dec. 134, 561 N.E.2d 412.
For these reasons, the judgment of the circuit court is affirmed.
Judgment affirmed.
McNAMARA and RAKOWSKI, JJ., concur.